Daniels, J.
The referee, as the result of the evidence, reported the sum of $6,153.84 to be due to the plaintiff from the defendant. This consisted of balances accruing in favor of John W. Eumsey & Co., on purchases and sales of lard and grain made in the business of the defendant, and they assigned the accounts for the balances to the plaintiff in this action. They resided in the city of Chicago, and were members of the board of trade, where the sales and purchases were mostly, if not entirely made. Morgan, Marsten & Co., were engaged in business in the city of New York, and it was through them, acting as agents for- the-defendant, that the orders were given upon which the business was carried on in Chicago.
By the evidence of John W. Conley, who represented and was a member of the firm of Eumsey & Co., and which appears to have been credited by the referee, it was shown that notices and accounts in the course of the business were agreed to be sent for the defendant to Morgan, - Marsten & Co. His statement was that it was understood and agreed between himself and Mr. Woolsey that all notices of purchases and sales for his account were to be-sent to the firm of Morgan, Marsten & Co., who were to send them to him, and in making the purchases and sales-they were to act under the orders of this firm. A statement of the purchases and sales was given by the witness, together with their results, and particular accounts, being-eleven in number, were stated to have been from time to time forwarded to Morgan, Marsten & Co., for the defendant. Further evidence to the same effect as to the dealings-carried on was given by John W. Eumsey, Hands P. C. Lassen and Paul Dana.
The evidence of these witnesses repeated the sales, and by that of Lassen it was stated that the accounts had been forwarded in the manner already mentioned. And he, together-with other witnesses, stated the balance appearing; *243 to be unpaid to Rumsey & Co. on these and another account, to amount to the sum of $6,611.61.
This balance in part consisted of losses resulting from what was called a Gotham account in which the defendant was interested to the extent of one-eighth. And it was stated by the witnesses that accounts or statements were from time to time forwarded in the same manner to Morgan, Marsten & Company of the business entering into this account. And by the evidence which George P. Morgan .gave before the referee, it was stated that the defendant at no time objected to either of the items or balances contained in these accounts, except to the sum of $400 as his share of the loss arising out of the purchase and sale of 75,000 bushels of wheat. An account of this tranaction, this witness testified was delivered to the defendant and retained by him without objection for a period of three or four months, and then he objected that Rumsey & Company were not authorized to purchase and sell this wheat as they did. But Mr. Conley said in his deposition, that after the business, which was carried on under the head of the Gotham account had resulted in losses of the amount of money furnished by the persons interested in it, amounting to $16,529.50, there still remained a balance to the credit of the associates of $3,470.50, and that Morgan, Marsten & Co. telegraphed to him to make purchases and sales of wheat in his discretion, as he thought best, for the Gotham account, but to lose no more money than stood to the •credit of that account, and that under this authority the wheat was purchased resulting in the loss by a fall in the market of $3,368.75. And under the evidence given concerning the agreement with the defendant that the business should be carried on through the directions of Morgan, Marsten & Co., this was binding upon him, as the referee concluded, as he very well might, from this proof and the •evidence of the witness Morgan, that the defendant was chargeable with his share of this loss, and had no legal ground to complain, as he did, of this sum of $400 having been charged against him.
From the evidence given showing the different transactions m the purchase of wheat, corn and lard, and the gams and losses resulting from the sales made of the property, and the transmission and rendition of the accounts, the referee had legal grounds upon which he could very well conclude, that the balance claimed in favor of the plaintiff was supported by it, notwithstanding the objections mentioned by the defendant himselt in the course of his evidence A plain question of fact was all that was presented by this proof, which clearly preponderated m favor of the plaintiff
*244 The defendant insisted, at the trial, that certain bonds of the St. Louis, Alton and Terre Haute Railroad Company, of the par value of $6,000, should be deducted from the balance appearing on the face of the accounts, or that he should have the advantage of the bonds by way of counterclaim against any sum which might be found due and owing in favor of the plaintiff. But it appeared, not only by the evidence on behalf of the plaintiff, but also by that, of the defendant himself, that these bonds were held as security by Rumsey & Co. for the balances arising in their favor against the defendant. And the proof was that the bonds were m their possession at the time when the trial was in progress. And at the close of the evidence on the part of the plaintiff, an offer was made to deliver the bonds to the defendant on payment by him of the sum claimed by the plaintiff with interest. This evidence constituted- a legal answer to the demand made in favor of the defendant for the allowance, by way of counterclaim or otherwise, of the value of these bonds, for the firm of Rumsey &■ Co. had the right to recover the amount of their debt against the defendant and still hold the bonds in their hands as. security for its ultimate payment. And until payment in fact should be made the defendant had no legal right to' the bonds, or to the allowance of their value as a counterclaim in the action. First National Bank v. Wood, 71 N. Y., 405.
When it was proposed to read the deposition of John W. Conley in evidence, objections were made on behalf of the-defendant to the third interrogatory on the ground that it contained three questions in one interrogatory. And for the additional reasons that it was not material whether Rumsey & Co. were members of the Chicago board of trade, or that the board had a printed constitution or bylaws.
The referee overruled the objections and the defendants-excepted, and the answers given by the witness were-allowed to be read. The objection to the interrogatory is formal in its character, and if it had any foundation whatever it should have been made when they were settled or allowed to be attached to the commission.
After the execution of the commission and the offer to-read the evidence, it was too late to interpose this objection which would readily have been obviated, if there was any foundation for it, had it been made when the interrogatories were presented for allowance. A like objection was made to the sixth interrogatory, and it was added further that it did not appear that any notices mentioned by the witness were delivered to the defendant. The objection to the form of the interrogatory is disposed of by what has- *245 already been said; and the other related to the order of proof rather than to its admissibility. And if there was anything in the objection it was afterwards removed by the proof given showing the transmission and delivery of the notices and accounts. A like objection was made to the form of the fourth interrogatory which was disposed of in the same manner by the referee. It was then objected that the answer to that interrogatory, stating that the amount agreed to be taken by the defendant in the Gotham account was $2,500, should not be received. That was overruled and the defendant excepted. But without considering the form of the objection there was no error in overruling it and receiving the evidence, for the fact that he took that interest was abundantly proved in the case. And it was not denied by the defendant himself, but rather conceded on his part, that he did agree to take an interest to this extent in the enterprise.
An exception was also taken to the exclusion of the answer of the defendant as to the value of the bonds, but under the circumstances this was not a material inquiry before the referee.. And in addition to that the objection was entirely removed by testimony afterwards received, in which the value of the bonds was stated to be from eighty to eighty-five cents. Some other objections were presented during the course of the trial which do not require to be considered, inasmuch as they are still more destitute of legal support, than those which have already been mentioned.
The evidence was ample to support the conclusions of the referee that the sum of money allowed by him in his report was due and owing from the defendant to the plaintiff as the assignee of Rumsey & Company, and the judgment should accordingly be affirmed.
Van Brunt, P. J., and Brady, J., concur.